IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DANIEL PAUL BUTLER                                                                                    PLAINTIFF

        v.                                    Civil No. 09-2002

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                        DEFENDANT

## MEMORANDUM OPINION

**I.**    **Factual and Procedural Background**

Plaintiff, Daniel Paul Butler, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income benefits ("SSI"), pursuant to § 1602 of Title XVI of the Social Security Act, 42 U.S.C. § 1381a ("the Act").

At the time Plaintiff's SSI application was filed, he was twenty six years of age and had completed the tenth grade. (Tr. 18, 94). He has no past relevant work. (Tr. 18). Plaintiff filed his SSI application on January 18, 2006, alleging a disability onset date of January 1, 2005, due to mood disorder/anger problems, osteoarthritis, and chronic back and leg pain. (Tr. 14, 63-68, 88-89, 96).

Plaintiff's SSI application was denied at the initial and reconsideration levels. (Tr. 50-51, 53-57). At Plaintiff's request, an administrative hearing was held on February 13, 2008. (Tr. 216-51). Plaintiff was present at this hearing and represented by counsel. The Administrative Law Judge (ALJ) rendered an unfavorable decision on July 22, 2008, finding that Plaintiff was not disabled within the meaning of the Act because he was capable of performing one or more occupations existing in significant numbers in the national economy. (Tr. 9-20). Subsequently, the Appeals

Council denied Plaintiff's Request for Review on November 7, 2008, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 2-4). Plaintiff now seeks judicial review of that decision.

## II. Medical History

### A. Hand Impairments

On May 29, 2005, Plaintiff visited the emergency room at Sparks Regional Medical Center after injuring his right hand hitting a wall. (Tr. 135). X-rays revealed dislocation of the right fourth and fifth carpal-metacarpal joints with an avulsion fracture of the base of the right fifth metacarpal bone and a fracture fragment off the anterior/medial aspect of the hamate bone. (Tr. 135, 175). On May 31, 2005, Plaintiff saw Dr. James Rochelle, who manipulated Plaintiff's hand without anesthetic and applied molding to maintain the reduction. (Tr. 174). Post-reduction x-rays were satisfactory, indicating reduction of the dislocation at the base of the fourth metacarpal bone with "near anatomic alignment." (Tr. 175). Plaintiff was given Lorcet for his pain and instructed to stay off work for three weeks. (Tr. 174). A follow-up x-ray, dated November 14, 2005, showed no evidence of acute fracture or dislocation, but did reveal "a small bony fragment adjacent to the hamate bone consistent with an old avulsion fracture in this region." (Tr. 169).

On January 28, 2006, Plaintiff was injured when a motor fell on his right hand. (Tr. 137). He went to the emergency room at Mercy Hospital of Scott County complaining of severe pain in his last two fingers. (Tr. 137-40). Following x-ray of his right hand, it was noted that Plaintiff had a previous amputation of the terminal phalanx of his third finger. (Tr. 140). "The bones are otherwise anatomically aligned with no acute fractures or dislocations presently identified. No bone disruptive lesions are presently seen." (Tr. 140).

B. Mood Disorder

On June 27, 2005, Plaintiff went to Dr. Danilo Cruz for his temper problems. (Tr. 170). "He says he gets mad very easily to the point of hurting himself or somebody. No suicidal or homicidal indices. No depressed feeling. No anxiety." (Tr. 170). Dr. Cruz diagnosed Plaintiff with mood disorder and prescribed Geodon. (Tr. 170). At a follow-up appointment on December 21, 2005, Dr. Cruz noted that Plaintiff continued to be very irritable, unable to sleep, and somewhat depressed. (Tr. 167). Plaintiff reported no hallucinations, delusions, or suicidal or homicidal ideations. (Tr. 167). Dr. Cruz diagnosed Plaintiff with mood disorder, depression, and anxiety, and prescribed Lexapro to help control his symptoms. (Tr. 167). Dr. Cruz's progress notes, dated January 5, 2006, stated that Plaintiff had "improved significantly" since starting Lexapro. (Tr. 166).

C. Ankle Injuries

On October 31, 2005, Plaintiff went to the emergency room at Mercy Hospital of Scott County after sustaining an injury to his left ankle when he jumped off the back of a truck. (Tr. 158). X-rays revealed no acute fracture line, dislocation or other acute bony lesion. (Tr. 158). Plaintiff was given pain medication and discharged. (Tr. 158).

On December 20, 2005, Plaintiff visited the emergency room at Mercy Hospital again when he fell off the back of a truck and hurt his right ankle. (Tr. 149). There was no numbness, tingling, or weakness of the right lower extremity, and an x-ray revealed no obvious fracture or dislocations. (Tr. 152). The attending physician diagnosed Plaintiff with right ankle strain and supplied him with cold packs, crutches, and a gel splint. (Tr. 152). Plaintiff was given Naprosyn and Lorcet for pain and told to follow-up with Dr. Cruz. (Tr. 152).

On January 16, 2006, Plaintiff was seen at Sparks Regional Medical Center after twisting his

left ankle while unloading a trailer. (Tr. 126). After noting previous injury to this extremity, the attending physician diagnosed Plaintiff with an ankle sprain and applied bandaging. (Tr. 126-29). An x-ray revealed no abnormalities. (Tr. 129).

D. Back Pain

Plaintiff saw Dr. Cruz on February 1, 2006, with complaints of back pain. (Tr. 166). Plaintiff indicated that his back pain had been long-standing, but had worsened over the past several months and often kept him up at night. (Tr. 165). Results of an MRI performed at St. Edwards revealed degenerative disc disease at L4-5 and L1-2, with evidence of mild disc bulging at L4-5. (Tr. 163). Plaintiff was given Lorcet and Flexeril for pain management. (Tr. 162, 165).

On February 28, 2006, Plaintiff saw Dr. James Rochelle upon referral for back and neck pain and numbness in his feet and right hand. (Tr. 171). An x-ray of Plaintiff's lumbar spine showed degenerative changes at L1-2 with disc space narrowing and mild end plate irregularity. (Tr. 173). Plaintiff's cervical spine was unremarkable. (Tr. 173). Dr. Rochelle diagnosed Plaintiff with Fibromyalgia, noting tenderness in the left iliotibial band, the gluteals, lumbar, thoracic and cervical paraspinals, supraspinatus, proximal biceps, lateral humerus and anterior second ribs bilaterally, and prescribed Lorcet for pain. (Tr. 171).

E. DDS Evaluations

In a physical RFC assessment dated June 1, 2006, performed by Alice M. Davidson[1], Plaintiff was diagnosed with right hand injury and degenerative disc disease. (Tr. 177). Davidson found that Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds,

---

[1] Ms. Davidson's consulting code indicates that she is involved in family or general practice. The full list of codes and specialties can be found on the Social Security Administration's website.

stand and/or walk for a total of about six hours in an eight-hour workday, sit for a total of about six hours in an eight-hour workday, and push and/or pull (including operation of hand and/or foot controls) an unlimited amount, other than as shown for lift and/or carry. (Tr. 178). Davidson also found that Plaintiff could frequently climb, balance, kneel and crawl and occasionally stoop and crouch. (Tr. 179). She also found that Plaintiff had no limitations with regard to reaching, handling (gross manipulation), or feeling, but was limited to occasional fingering (fine manipulation) with the right hand. (Tr. 180). Davidson further noted that Plaintiff had no visual, communicative, or environmental limitations. (Tr. 180-81). This assessment was reviewed and affirmed by Dr. Bill F. Payne on December 5, 2006. (Tr. 188).

On January 30, 2007, Plaintiff underwent a mental evaluation performed by Dr. Robert L. Spray, Jr., a psychologist. (Tr. 191-96). Dr. Spray noted no history of mental health treatment. (Tr. 191). When asked why he was applying for disability, Plaintiff stated, "I can't work at a regular place. I can't remember very good. I ain't got a diploma. I can't get along with others . . . I got a bad temper. I got a bad back too. I got run over when I was younger." (Tr. 191). Regarding his education and activities, Plaintiff stated that he completed the tenth grade and was in special education classes for reading and math. (Tr. 192). He stated he does not do household chores, shop or prepare meals, but he sometimes helps his father mow the yard or work on the truck. (Tr. 195). Although Plaintiff claimed he does not drive, his wife stated that he drives his mother around "hunting cans." (Tr. 196). When asked about his employment history, Plaintiff indicated that he had trouble sustaining work activity because he would get frustrated or get into an argument with his boss and walk off the job site. (Tr. 192). "I can't take orders very good. All my life I've had people tell me to do things. I can't take it. I have a tendency to throw people around." (Tr. 192).

On the Wechsler Adult Intelligence Scale-III ("WAIS-III"), Plaintiff received a Verbal IQ score of 62, a Performance IQ of 69, and a Full Scale IQ of 62, indicating mild mental retardation. (Tr. 194). However, due to an abrupt shift in Plaintiff's demeanor when he left the office, Dr. Spray noted the possibility of malingering. (Tr. 194). Specifically, Dr. Spray stated:

> Although his mood was somber and he talked in a monotone voice during the exam, it was curious that as he left the office to go to a vehicle in the parking lot, he was laughing and joking with his wife. This seemed rather incongruous to the mood he displayed in the office, and might suggest the possibility of malingering.

(Tr. 194). In Axis I, Dr. Spray diagnosed Plaintiff with Impulse Control Disorder (provisional) and possible malingering. (Tr. 194). With respect to Plaintiff's capacity to perform sustained work activity, Dr. Spray found:

> Capacity to Communicate/Interact: He communicated well with this psychologist, although he was just passively cooperative. He reports a history of easy irritability which has at times resulted in altercations on a job or in him walking off the job.
> Capacity to Cope with Work-like Tasks: Psychometrically, he appears to have limited cognitive functioning. However, his reason for not having any domestic responsibilities is because of problems with his anger.
> Ability to Attend/Sustain Concentration: He attained a scaled score of 6 on the Digit Span subtest of the WAIS-III. This is over one standard deviation below the mean. However, it does not represent a severe impairment. If there are any problems in sustained attention, they are likely related to motivation and his reported difficulty coping with authority.
> Ability to Sustain Persistence: He showed good persistence on the Block Design subtest and the performance subtests in general. However, he often responded "don't know" to verbal subtest items without much contemplation. He has a history of not persisting with tasks that are in some way irritating to him.
> Capacity to Complete Work-like Tasks: Based on his presentation, his ability to complete work-like tasks is partly a function of his difficulty coping with authority figures. On the other hand, if the psychometric testing is accurate, his cognitive functioning is such that he would need supervision.

(Tr. 195).

On June 13, 2007, Plaintiff underwent another psychological examination performed by Keith Norwood, M.S. (Tr. 198-200). Norwood found that Plaintiff "was friendly and cooperative.

He related in an immature manner. He was persistent in his approach to presented tasks and did not have problems following directions." (Tr. 198). Although Plaintiff admitted to having "anger management problems," he had not taken medication for five years. (Tr. 199). On the Stanford Binet, Fourth Edition, Plaintiff received a composite score of 84, indicating functioning within the low average range. (Tr. 199). Norwood found no evidence of exaggeration or malingering, and felt this to be a fair estimate of Plaintiff's level of functioning. (Tr. 199). Norwood opined that it "does appear that concerns related to behavioral problems and limited academic skills would affect his ability to work at jobs within the national economy." (Tr. 200).

In a Psychiatric Review Technique dated June 25, 2007, Dan Donahue, a DDS evaluator, found that although Plaintiff suffered from impulse control disorder, he did not satisfy the diagnostic criteria for listing 12.08 (personality disorders). (Tr. 209-12). Specifically, Donahue noted that Plaintiff had only moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation, each of extended duration. (Tr. 212). Additionally, Donahue noted that Plaintiff did not appear to be mildly mentally retarded due to malingering during his first psychiatric evaluation. (Tr. 214).

### III.  Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether

evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

## IV. Discussion

The ALJ made the following findings: (1) Plaintiff has not engaged in substantial gainful activity since January 18, 2006, the application date (20 C.F.R. §§ 416.920(b) and 416.971 *et seq.*); (2) Plaintiff has the following severe impairments: mood disorder, osteoarthritis, and degenerative disc disease (20 C.F.R. § 416.920(c)); (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926); (4) Plaintiff has the RFC to lift and/or carry ten pounds frequently, twenty pounds occasionally, and to sit/stand/walk for a total of six hours each in an eight-hour workday. He cannot have driving as part of his work duties. He is able to perform gross movements with the hands and fine manipulation occasionally with the right hand. He can occasionally climb ramps and stairs and can stoop, bend, crouch, crawl, kneel, and balance. He cannot climb scaffolds, ladders, or ropes. From a mental standpoint, he cannot perform work which would require complex reading, writing, and math but can do very simple reading, writing, and math with mainly oral instructions. He is able to perform routine work with superficial contact incidental to work with the public and co-workers. Such work has non-complex simple instructions, is learned by rote with few variables, requires little judgment, and supervision is concrete, direct, and specific; (5) Plaintiff has no past relevant work (20 C.F.R. § 416.965); (6) Plaintiff was born on June 6, 1979, and was 26 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 C.F.R. § 416.963); (7) Plaintiff has limited education and is able to communicate in English (20 C.F.R. § 416.964); (8) Transferability of job skills is not an issue because Plaintiff does not have past relevant work (20 C.F.R. § 416.968); (9) Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in

significant numbers in the national economy that Plaintiff can perform[2] (20 C.F.R. §§ 416.960(c) and 416.966); and (10) Plaintiff has not been under a disability, as defined in the Act, since January 18, 2006, the date the application was filed (20 C.F.R. § 416.920(g)).  (Tr. 14-20).

Plaintiff contends that the ALJ erred by:(1) improperly determining his RFC ; (2) dismissing his subjective complaints; and (3) failing to fully and fairly develop the record. *See* Pl.'s Br. 11-18.

A.  Plaintiff's RFC

Plaintiff first argues that the ALJ's RFC assessment does not adequately reflect Plaintiff's right hand limitations and mental impairments.  *See* Pl.'s Br. 14-16.  At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir

---

[2] Using the Medical-Vocational Guidelines as a framework, the ALJ determined that Plaintiff's limitations impede his ability to perform the full range of light work.  (Tr. 19).  To determine the extent to which Plaintiff's limitations eroded the light, unskilled occupational base, the ALJ then asked a vocational expert ("VE") whether jobs exist in the national economy for an individual of the claimant's age, education, work experience, and RFC.  (Tr. 19).  The VE testified that, given these factors, an individual would be able to perform the requirements of representative occupations such as housekeeping, DOT #323.687-014, of which there are approximately 800 jobs locally and 409,000 nationally, meat processing,  DOT #525.687-070, of which there are approximately 1,300 jobs locally and 75,000 nationally, and hand packager, DOT #929.687-054, of which there are approximately 2,100 jobs locally and 203,000 nationally.  (Tr. 244-48).  Based on the VE's testimony, the ALJ concluded that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy, and, accordingly, a finding of "not disabled" was appropriate.  (Tr. 19).

2000).

>The ALJ made the following findings regarding Plaintiff's RFC:
>
>[T]he undersigned finds that the claimant has the residual functional capacity to lift and/or carry 10 pounds frequently, 20 pounds occasionally, and to sit/stand/walk for a total of 6 hours in an 8-hour workday. He cannot have driving as part of work duties. He is able to perform gross movements with the hands and fine manipulation occasionally with the right hand. He can occasionally climb ramps and stairs and can stoop, bend, crouch, crawl, kneel, and balance. He cannot climb scaffolds, ladders, or ropes.

(Tr. 14).

Substantial evidence supports the ALJ's physical RFC assessment. In determining Plaintiff's RFC, the ALJ relied on the RFC assessment of Alice Davidson, a consultative examiner, as well as the medical evidence as a whole. (Tr. 177-84). In addition to the limitations Davidson gave Plaintiff, the ALJ specifically added that Plaintiff could not climb scaffolds, ladders, or ropes, or drive a vehicle. (Tr. 14, 244). "This is primarily a protection because of some problems he's had with his right hand." (Tr. 244).

The assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). However, in this instance, Plaintiff provided no contrary RFC assessment by another physician, treating or otherwise. *See Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (consulting physician's RFC assessment supported the ALJ's RFC finding when none of the claimant's treating physicians opined that she was unable to work). Furthermore, the medical evidence of record is consistent with the ALJ's RFC assessment.

Substantial evidence likewise supports the ALJ's determination regarding Plaintiff's mental impairments. The ALJ specifically took into account Plaintiff's functional and interpersonal limitations when she stated:

> From a mental standpoint, he cannot perform work which would require complex reading, writing, and math but can do very simple reading, writing, and math with mainly oral instructions. He is able to perform routine work with superficial contact incidental to work with public and co-workers. Such work has non-complex simple instructions, is learned by rote with few variables, requires little judgment, and supervision is concrete, direct, and specific.

(Tr. 14). The ALJ's mental RFC assessment directly corresponds to the medical evidence of record. Moreover, substantial evidence supports the ALJ's conclusion that Plaintiff malingered during his first psychological examination (yielding unreliable results) and that his mental impairments result in no more than moderate work-related limitations. *See Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).

For these reasons, Plaintiff failed to demonstrate that he was unable to perform substantial gainful activity. *See* Goff v. Barnhart 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant"). Accordingly, substantial evidence supports the ALJ's RFC assessment.

B. <u>Plaintiff's Subjective Complaints</u>

Plaintiff contends the ALJ erred in disregarding his subjective complaints. Specifically, Plaintiff argues that the ALJ failed to make express credibility determinations regarding his subjective allegations of pain. *See* Pl.'s Br. 16-18. We disagree.

When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of

medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them." *Medhaug v.* Astrue, 578 F.3d 805, 816 (8th Cir. 2009) (quoting Goff *v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005)). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.*

At the hearing, Plaintiff testified that he could not shave, hold a knife in his hand to cut steak, pump gas, or comb his own hair due to limited use of his right hand. (Tr. 233-34). Plaintiff also stated that he cannot program a VCR, look up numbers in a telephone directory, or read a map. (Tr. 239). With respect to his temper, Plaintiff testified that cannot be around people and "goes off" at least three or four times a day. (Tr. 235). He does not shop or prepare meals and cannot stay on task long enough to complete chores. (Tr. 79). Plaintiff also stated that he cannot remain focused long enough to watch a movie or the news. (Tr. 237).

The ALJ determined that Plaintiff's subjective complaints were not credible because they were inconsistent with his activities, use of medication, course of treatment, and the objective medical findings. (Tr. 15-18). Specifically, the ALJ stated:

> The undersigned finds in this case that a degree [o]f pain is substantiated by the record, however, the claimant's pain relief seeking behavior and treatment is not indicative of a degree of pain that would limit activities beyond the scope of the residual functional capacity as determined in this decision. Therefore, after careful consideration of the weight and preponderance of the credible evidence of record, including testimony presented at the hearing, the undersigned finds that the pain and discomfort factor is not of such persistence or severity as to be disabling.

(Tr. 17-18).

In explaining her findings, the ALJ noted that treatment and medication have been effective in controlling Plaintiff's symptoms so long as he remained compliant. (Tr. 15). Additionally,

although Plaintiff stated he could not afford the cost of medication, he never applied for any medication assistance programs nor provided evidence that he sought treatment and was refused. (Tr. 16, 242). *See Clark v. Shalala*, 28 F.3d 828, 831 n. 4 (8th Cir. 1994) (ALJ properly discounted claimant's subjective complaints when he failed to provide evidence of refusal of services due to lack of financial resources). The ALJ also found that Plaintiff's allegations of restricted activities were not consistent with his ability to travel to see family and go out to dinner. (Tr. 15-16, 229-30). Finally, in discounting Plaintiff's subjective complaints, the ALJ pointed out evidence of malingering at the 2007 consultative mental evaluation with Dr. Spray. (Tr. 16).

Contrary to Plaintiff's assertion, the ALJ properly cited the *Polaski* factors and made express findings regarding Plaintiff's daily activities, the duration, frequency and intensity of his pain, and his treatment record. It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints.

Moreover, the record demonstrates that Plaintiff's treatment and activities are inconsistent with his allegations of disabling pain. Although the evidence shows that Plaintiff's symptoms significantly improved while taking Lexapro, he failed to comply with treatment on a continuing basis. (Tr. 166). Plaintiff states that "failure to avail one[self] of medical treatment due to financial constraints is not considered refusal of treatment." *See* Pl.'s Br. 17. We agree. *See Goff*, 421 F.3d at 793 (claimant's statements that she could not afford treatment alone, without evidence that she

sought treatment and was denied for financial reasons, are relevant to the credibility determination).

The court finds it curious that Plaintiff claims he cannot shave or cut meat when he readily admits to putting together models, working on his truck, and doing yard work occasionally, all of which require a certain level of dexterity. (Tr. 80, 194-96). Finally, Dr. Spray's concern about possible malingering at the 2007 consultative examination supports the ALJ's credibility determination. *See Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (citing *Clay v. Barnhart*, 417 F.3d 922, 930 n. 2 (8th Cir. 2005) (evidence of malingering cast doubt on claimant's motivations and credibility). A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792). For these reasons, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints.

C. Duty to Fully and Fairly Develop the Record

In his final argument, Plaintiff contends the ALJ failed to fully and fairly develop the record concerning his right hand limitations. *See* Pl.'s Br. 11-14. The ALJ has a duty to fully and fairly develop the record, even if a claimant is represented by counsel. *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). "It is well-settled that the ALJ's duty to fully and fairly develop the record includes the responsibility of ensuring that the record includes evidence addressing the alleged impairments at issue from either a treating or examining physician. *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir.2000). While the Secretary is under no duty to go to inordinate lengths to develop a claimant's case, he must "make an investigation that is not wholly inadequate under the circumstances." *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994) (quoting *Miranda v. Secretary of Health, Educ. & Welfare*, 514 F.2d 996, 998 (1st Cir. 1975)). There is no bright-line test for

determining when the Secretary has failed to adequately develop the record; the determination must be made on a case by case basis. *Battles*, 36 F.3d at 45 (quoting *Lashley v. Secretary of Health & Human Serv.,* 708 F.2d 1048, 1052 (6th Cir.1983)).

Under the circumstances of this case, the ALJ fulfilled his duty to fully and fairly develop the record. The record is wholly devoid of any evidence, from treating and non-treating physicians alike, that Plaintiff's right hand injury has resulted in a disabling impairment. Dr. Rochelle's records note that post-reduction x-rays of Plaintiff's right hand (following injury sustained when Plaintiff punched a wall on May 29, 2005) were "satisfactory" and showed "near anatomic alignment." (Tr. 174-75). Additionally, Plaintiff sustained "no acute traumatic injury" to his right hand when a motor fell onto it on January 28, 2006. (Tr. 140). The medical records from Plaintiff's treating physicians are fully compatible with the evaluations performed by DDS consultants and, as such, the court finds that more than enough evidence existed for the ALJ to make a proper disability determination. Moreover, Plaintiff has demonstrated no prejudice or injustice as a result of this alleged failure to develop the record. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (unfairness or prejudice is necessary for a reversal due to failure to develop the record). Accordingly, the court finds that the ALJ satisfied his duty to fully develop the record.

### V. Conclusion

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

ENTERED this 17th day of February 2010.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE